United States District Court
Southern District of Texas

**ENTERED**

March 21, 2024

Nathan Ochsner, Clerk

## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | | |
|---|---|---|
| **LYNN JACKSON,** | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| **v.** | § | |
| | § | **Civil Action No. 4:23-CV-00344** |
| **AMAZON.COM SERVICES** | § | |
| **LLC,** | § | |
| | § | |
| **Defendant.** | § | |
| | § | |

---

## DEFENDANT AMAZON.COM SERVICES LLC'S
## FINAL ORDER OF JUDGMENT

---

1.     This matter came before this Court for a final pretrial conference on March 14, 2024, and the Court took notice of the lack of merit to Plaintiff Lynn Jackson's ("Jackson") claims against Defendant Amazon.com Services LLC ("Amazon") (collectively, the "Parties"). In light of the arguments at the hearing by counsel for the Parties and the arguments and evidence provided by the Parties in prior pleadings, it is hereby ordered as follows:

### I.     INTRODUCTION

2.     Jackson brings this action against his former employer, Amazon, pursuant to the Commission on Human Rights Act, Tex. Labor. Code § 21.001, *et seq.* ("TCHRA") alleging claims of retaliation and race, color, national origin, and

disability discrimination. After removing this action to this court and at the close of discovery, Amazon moved pursuant to Rule 56 for summary judgment on all claims. Dkt. 14. Jackson opposed Amazon's motion, and Amazon filed a reply. Dkts. 18, 20. After the Parties briefed their respective positions, the Court denied Amazon's motion. Dkt. 21. At the March 14, 2024 final pretrial conference, the Court heard oral argument on the existing claims, including the evidence Jackson planned to present at trial. Finding a lack of evidentiary support for Plaintiff's claims, the Court ordered Amazon to submit its position as to denial of Jackson's claims supported by existing legal authority. *See* Dkt. 40. Having carefully considered the Parties' positions, re-reviewing the evidence submitted to the Court in the Parties' summary judgment filings, the Court hereby grants summary judgment to Amazon on Jackson's claims pursuant to Rule 56(f).

## II.   BACKGROUND

3.      Amazon hired Jackson, an African American male, as a Seasonal Fulfillment employee in April 2020.   Dkt. 14, Ex. B-2, Offer Letter at AMAZON_000077–79, submitted in support of Amazon's Motion for Summary Judgment. Jackson identifies his national origin as "American." Dkt. 14, Ex. A, Plaintiff's Deposition ("Plaintiff's Dep.") at 44:3-4; 44:13-18. Amazon maintained a Fulfillment Center in Houston, Texas called HOU2 where Jackson worked. Dkt. 14, Ex. C, Declaration of Rachel Soto ("Soto Decl." at ¶ 3. Jackson initially reported

to India Pollock; on June 26, 2020, he began reporting to Michael Kain. Dkt. 14, Ex. B-3, Plaintiff's Job Data at AMAZON_000062–66.

4.      After injuring himself at work, Amazon approved leave for Jackson as an accommodation from July 17, 2020, to October 15, 2020. Dkt. 14, Ex. A, Plaintiff's Dep. at 102:17-25; Ex. B-3, Job Data at AMAZON_000062–66; *see also* Ex. B-4, Letter at AMAZON_000453.  On October 6, 2020, Jackson visited a medical provider who released him to return to work that same day, with a lifting restriction of 10 pounds. Dkt. 14, Ex. A, Plaintiff's Dep. at 141:22–142:22; Ex. B-6, Return to Work Release at AMAZON_000445.  On October 12, 2020, Rachel Soto, an Amazon Disability Leave Services Case Manager, notified Jackson by letter and email that he was scheduled to return to work on October 16, 2020. Dkt. 14, Ex. B-7, October 12 Email at AMAZON_000506; Ex. B-8, October 12 Letter at AMAZON_000298.

5.      On October 20, 2020, Soto emailed Jackson another letter requesting that he return to work given that his medical "certification release[d] [him] to return to work on October 16, 2020." Dkt. 14, Ex. B-4, October 20 Letter at AMAZON_000455; Ex. B-7 October 20 Email at AMAZON_000500–503.  On October 23, Soto emailed Jackson yet another return-to-work letter, stating:

> We received a return to work notice from your healthcare provider indicating you were able to return on October 16, 2020.  As of October 23, 2020, you have not returned to work.  Please contact me as soon as you are able so we can

> discuss extending your leave and returning you to work.
> If we do not hear from you in the next 7 days, we will
> consider your case closed. Any absences after October 15,
> 2020 are not currently covered by leave, and are subject to
> Amazon's attendance rules and policy. Violation of
> Amazon's attendance rules and policy can result in
> disciplinary action up to and including separation of
> employment.

Dkt. 14, Ex. B-9, October 23 Letter at AMAZON_000472; Ex. B-7, October 23

Email at AMAZON_000500.

6.     On October 27, 2020, Soto again emailed Jackson stating:

> I have been trying to reach you for a while as you have
> been accommodated in you[r] site. You were expected to
> return to work since 10/16 and no additional absences after
> 10/15 will be covered. We have also sent you updated
> communications with this information on multiple
> occasions, your case will now be closed. Please return to
> work immediately to avoid further absences.

Dkt. 14, Ex. B-7, October 27 Email at AMAZON_000498–499.

7.     Jackson admitted in his deposition that Amazon used his correct

mailing and email address for all communications concerning his leave (Dkt. 14, Ex.

A, Plaintiff's Dep. at 125:17-20; 144:2-12; 157:2-3), though he denies receiving any

of the emails from Amazon instructing him to return to work.   Dkt. 14, Ex. A,

Plaintiff's Dep. at 156:25–157:1 (October 20, 2020 Letter); 158:7-8 (October 23,

2020 Letter); 154:16-17 (October 27, 2020 Email).

8.     On October 28, 2020, an Amazon Human Resources Business Partner

also emailed Jackson, to advise Jackson that he had missed his last three scheduled

shifts and that Amazon had been attempting to contact him.  Dkt. 14, Ex. B-10,

October 28 Email at AMAZON_000621.  The email from Human Resources states

in plain terms: "Per Amazon's Attendance Policy, if you do not attend work for three

consecutive scheduled shifts without notification, we will assume you have

voluntarily resigned from your position and will proceed with your termination for

Job Abandonment."  *Id.*

      9.     Jackson responded to the October 28 email the same day, stating: "I'm

hav[ing] a medical procedure this week- I have been waiting for weeks – I am not

rescheduling my procedure- Please stop stressing me out."  Dkt. 14, Ex. B-10,

October 28 Email at AMAZON_000621; *see also* Ex. C, Soto Decl. at ¶ 16.

Although Jackson claims he separately forwarded medical documentation to

Amazon regarding this procedure (Dkt. 14, Ex. A, Plaintiff's Dep. at 196:20–

197:14), no such records were produced during discovery, and Amazon has no

record of Jackson providing this documentation.

      10.    According to Jackson, he believed he was supposed to return to work

on November 16, 2020 (Dkt. 14, Ex. A, Plaintiff's Dep. at 162:1-4), citing an

October 19, 2020, notice stating that his leave of absence was provisionally approved

through November 16, 2020.    Dkt. 14, Ex. B-14, October 19 Letter at

AMAZON_000449.  Even so, Jackson did not return to work on November 16, 17,

18, or at any point thereafter.  Dkt. 14, Ex. A, Plaintiff's Dep. at 164:21-23.

Jackson's own emails confirm that he was on notice no later than October 28, 2020, that Amazon expected him to immediately return to work. Dkt. 14, Ex. B-10, October 28 Email at AMAZON_000621.

11.    Amazon's Attendance Policy states, in relevant part: "[t]ermination of employment will . . . occur when an associate . . . has three consecutive missed shifts[.]"  Consistent with this policy, Human Resources terminated Jackson's employment for job abandonment on November 18, 2020. Dkt. 14, Ex. B-11, Global Specialty Fulfillment – Ready Attendance Policy, AMAZON_000009–11.

12.    Prior to Jackson's leave and subsequent termination, on June 18, 2020, Jackson filed a complaint alleging that his then-supervisor, Kain, harassed him because he sustained a hand injury. Dkt. 14, Ex. A, 115:19-119:25; Ex. B-15, the Employee Relations file for Plaintiff's June 18 Complaint, at AMAZON_000623–624. Jackson concedes that Amazon assured him his complaint was confidential and that no negative action would be taken against him for raising his concern. Dkt. 14, Ex. A, Plaintiff's Dep. at 176:23-177:5; Ex. B-16, Plaintiff's October 25 Email at AMAZON_000607.  Despite these assurances, Jackson admitted at his deposition that he refused to participate in the investigation of his June complaint. Dkt. 14, Ex. A, Plaintiff's Dep. at 177:6-16.

13.    On October 25, 2020, while on leave, Jackson made a second complaint that he was being harassed because of a back injury. Dkt. 14, Ex. B-16, Plaintiff's

October 25 Email at AMAZON_000607.   Jackson did not disclose who was harassing him or how.  *Id.*  Amazon responded that same day to request more details so Jackson's concern could be properly investigated.  *Id.* at AMAZON_000608. Jackson, however, did not respond to several requests for an interview or provide additional information.   Dkt. 14, Ex. B-17, the Employee Relations File for Plaintiff's October 25 Complaint, at AMAZON_000609.  As a result, Amazon closed its investigation. *Id.*

14.     At the time Jackson was terminated, no decisionmaker involved in terminating Jackson's employment was aware of the concerns he raised. Dkt. 14, C, Soto Decl. at ¶ 24.

## III.   PROCEDURAL BACKGROUND

15.     Jackson filed his Original Petition in Harris County District Court, and on February 1, 2023, Amazon timely removed this action to this Court. Dkt. 1.  On March 23, 2023, this Court entered a Scheduling Order, which directed the Parties to complete all discovery by September 29, 2023, and file any dispositive motions by October 31, 2023.  On August 19, 2023, Amazon served its discovery requests on Jackson, including requests for the production of documents, two sets of interrogatories, and requests for admission. Dkt. 11, at 1–2. On September 20, 2023, Amazon took Jackson's deposition.  On September 22, 2023, four days after the discovery responses were due, Jackson served his responses to Amazon's requests

for production and requests for admission and served his first set of discovery requests on Amazon. Dkt. 12, at 3–4. Jackson did not serve initial disclosures or otherwise identify any witnesses, and Jackson never responded to Amazon's interrogatories. Also on September 22, 2023, Jackson moved to amend the discovery and dispositive motions deadlines, which Amazon opposed. Dkt. 12, at 2. The Court denied Jackson's motion and found that Jackson failed to show he acted diligently to conduct discovery during the time provided. Dkt. 12, at 3–4.

16. On October 31, 2023, Amazon moved for summary judgment. Dkt. 14. Jackson opposed Amazon's motion, Dkt. 18, and Amazon filed a reply. Dkt. 20. This Court denied Amazon's motion on December 21, 2023, and set a deadline of February 29, 2024, to submit all pretrial exhibits and file all pretrial submissions. Dkt. 21, 23.

17. On January 16, 2024, Jackson filed a motion to reopen discovery and compel Amazon's responses to his discovery requests. Dkt. 22. The Court denied this application on February 20, 2024. Dkt. 27.

18. On February 27, 2024, Jackson filed an opposed motion to withdraw deemed admissions. Dkt. 28. Amazon responded on March 11, 2024 (Dkt. 31), and Jackson filed a reply on March 12, 2024. (Dkt. 34). After hearing arguments by counsel for the Parties at the March 14, 2024 hearing, the Court denied Jackson's motion. Dkt. 40. As a result of this ruling, it is deemed admitted that Jackson

received emails on September 18, 2020, October 12, 2020, October 20, 2020, October 23, 2020, and October 27, 2020 advising him of his obligation to return to work. Dkt. 30. It is also deemed admitted that Jackson failed to report to work from October 16, 2020 through November 18, 2020. *Id.*

19.    After the Parties filed their pretrial submissions, on March 14, 2024, the Parties appeared for a final pretrial conference before this Court. Dkt. 40. The Court heard oral argument on the merits of Jackson's claims and continued the trial term.

## IV.    DISCUSSION

### A. Summary Judgment Standard

20.    Summary judgment is appropriate when the pleadings and evidence on file show that no genuine issue exists as to any material fact and that the moving party is entitled to judgment as a matter of law.    Fed. R. Civ. P. 56(a). "[T]he substantive law will identify which facts are material." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).    A genuine issue of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Id.*

21.    Rule 56(f) provides that a district court may grant a motion for summary judgment "on its own after identifying for the parties material facts that may not be genuinely in dispute" if the court has given the parties "notice and a

reasonable time to respond." Fed. R. Civ. P. 56(f)(3). District Courts "possess the power to enter summary judgments *sua sponte*, so long as the losing party was on notice that []he had to come forward with all of [his] evidence." *Celotex Corp. v. Catrett*, 477 U.S. 317, 326 (1986).

22.     The Fifth Circuit has held that a district court does not abuse its discretion when it reconsiders a motion for summary judgement which was fully briefed by both parties and does not go outside the evidence and arguments that had been presented when it ruled. *Baig v. McDonald*, 749 Fed. Appx. 238, 241 (5th Cir. 2018); *see also Conkling v. Turner*, 18 F.3d 1285, 1296 (5th Cir. 1994) ("a trial court may reconsider a previously denied motion for summary judgment even in the absence of new evidentiary material"). Thus, if parties had the opportunity to meet in court and there is "no dispute as to as to any fact material to the issue being litigated," then granting summary judgment in favor of a non-movant is appropriate. *Fountain v. Filson*, 336 U.S. 681, 683 (1949).

## B. Jackson's Race, Color, Disability, and National Origin Claims Under the TCHRA

### 1. Jackson has failed to present a prima facie case of discrimination.

23.     Jackson brings his race, color, disability, and national origin discrimination claims against Amazon under the TCHRA, which prohibits employment discrimination based on "race, color, disability, religion, sex, national origin, or age." Tex. Lab. Code § 21.051. The Supreme Court of Texas has

10

instructed Texas courts to consult judicial interpretations of Title VII of the Civil

Rights Act of 1964, 42 U.S.C. § 2000e, *et seq*. ("Title VII") and follow the approach

of the United States Supreme Court in interpreting Title VII when reviewing

TCHRA claims. *Mission Consol. Indep. Sch. Dist. v. Garcia*, 372 S.W.3d 629, 633–

34 (Tex. 2012); *accord Ross v. Judson Indep. Sch. Dist.*, 993 F.3d 315, 321–22 (5th

Cir. 2021).

24.     To establish a discrimination claim under TCHRA, the plaintiff must

show he: (1) is a member of a protected class; (2) was qualified for his position;

(3) was subjected to an adverse employment action; and (4) was treated differently

from other similarly situated employees because of that protected characteristic.

*Ross*, 993 F.3d at 321–22. To establish the similarly situated requirement, a plaintiff

must demonstrate his employer terminated his employment for misconduct "nearly

identical" to the conduct of non-African-American and non-disabled employees

whom the company retained. *Parra v. Devon Energy Prod. Co.*, No. CIV.A. H-10-

0602, 2011 WL 1232818, at \*5 (S.D. Tex. Mar. 31, 2011).

25.     The Parties do not dispute Jackson meets the first three elements of the

*prima facie* case. *See* Dkt. 14, at 11–12; Dkt. 18, at 16–20. Plaintiff, however, has

failed to establish a causal connection between Jackson's termination and his various

protected classifications and whether Amazon treated other employees differently

after they failed to return to work. *See* Dkt. 14, at 11–12; Dkt. 18, at 16–20.

11

26.     With regard to Jackson's national origin discrimination claim under the

TCHRA, Jackson fails to establish a *prima facie* case because he has presented no

probative evidence to support his national origin claim. Jackson testified at his

deposition that his national origin is "American," and he has no basis to allege

discrimination based on his national origin. Dkt. 14, Ex. A, Plaintiff's Dep. at 44:3-

4; 44:13-18.  Even a subjective belief that he suffered discrimination based on his

national origin does not constitute summary judgment evidence, and here, Plaintiff

made it clear that he does not even hold that subjective belief. *Kennerson v. Guidry*,

135 F. App'x 639, 641 (5th Cir. 2005) (subjective belief of discrimination and/or

retaliation is insufficient to raise a genuine issue of material fact); *see also Morkos*

*v. DNV GL USA, Inc.*, No. CV H-18-2037, 2020 WL 10897966, at *7 (S.D. Tex.

Dec. 3, 2020), *aff'd*, No. 22-20267, 2023 WL 155417 (5th Cir. Jan. 11, 2023)

(granting summary judgment on plaintiff's national origin discrimination claim

where plaintiff testified at his deposition that no comments were made that related

to his national origin).  Further, after Amazon raised this argument in its motion for

summary judgment (Dkt. 14, at 10) and Jackson failed to address Amazon's

argument (*see* Dkt. 18), the Court finds Jackson has abandoned any claim for

discrimination on the basis of his national origin. *See Gilley v. Protective Life Ins.*

*Co.*, 17 F.3d 775, 781 n.13 (5th Cir. 1994).

27.     Jackson's race, color, and disability discrimination claims likewise fail

because Jackson has failed to establish a *prima facie* case. Jackson's evidence of race, color, and disability discrimination claims are based on his own deposition testimony regarding his subjective beliefs.

28.     With regard to his race and color discrimination claims, Jackson made two contemporaneous complaints to Amazon about mistreatment, neither of which referenced his race or color. When this was pointed out to Jackson during his deposition, he testified that he needed to revise his prior testimony and, only then, Jackson proceeded to testify that other people purportedly told him Kain made disparaging statements about Black people. Dkt. 18-1, Ex. B, Plaintiff's Dep. at 58:21–61:10. Jackson did not testify he overheard or experienced any of these statements first-hand. "Inadmissible hearsay is not 'enough to get past the summary judgment hurdle.'" *Martin v. Kroger Co.*, 65 F. Sup. 2d 516, 541 (S.D. Tx. 1999) (quoting *Garcia v. Reeves Cty.*, 32 F.3d 200, 204 (5th Cir. 1994)) (granting summary judgment to defendant on all plaintiff's claims, including race discrimination under the TCHRA). Moreover, this inadmissible hearsay does not establish that any adverse employment actions were taken because of his race or color. Thus, Jackson's testimony that others purportedly told him Kain made statements about Black individuals is insufficient to maintain his claim of race and color discrimination.

29.     To the extent Jackson alleges he was discriminated against by Amazon

under a disparate treatment theory, his claims still fail. The same *prima facie* analysis applies to a disparate treatment theory, except in the case of disparate treatment, a plaintiff must show that similarly situated employees outside of the protected class were treated more favorably. *Agoh v. Hyatt Corp.*, 992 F. Supp. 2d 722, 734 (S.D. Tx. 2014) (citing *Bryan v. McKinsey & Co.*, 375 F.3d 358, 360 (5th Cir. 2004)). Jackson conducted no discovery into his claims, including whether other similarly situated, non-African-American and non-disabled employees were retained after failing to return to work. As a result, there is no record evidence that non-African-American and non-disabled employees were treated any differently than Jackson and not terminated. Absent any such evidence, Jackson is unable to establish a *prima facie* case of race and disability discrimination. *Parra*, 2011 WL 1232818, at *5 (granting summary judgment where plaintiff was terminated for failing to return to work and failed to present evidence of disparate treatment).

> 2. *Jackson has failed to show evidence that Amazon's reason for his termination was a pretext for discrimination.*

30. Even if Jackson could establish a *prima facie* claim of discrimination, his claims still fail because Amazon provided a legitimate, non-discriminatory reason for terminating his employment, which Jackson cannot show was pretext for discrimination.

31. Jackson's physician cleared him to return to work on October 6, 2020. On October 12, Amazon notified Jackson he was scheduled to return to work on

October 16. Still, Jackson failed to return to work even though Amazon sent multiple reminder letters and emails regarding his return-to-work date, and he missed shifts. Jackson mistakenly believed he was supposed to return to work on November 16, 2020. Despite this mistaken belief, he did not return on that date either. After failing to report to work for more than a month after being cleared by his physician, Amazon terminated Jackson's employment for job abandonment on November 18, 2020.

32.    To establish pretext, a "plaintiff must substantiate his claim of pretext through evidence demonstrating that discrimination lay at the heart of the employer's decision." *Price v. Fed. Express Corp.*, 283 F.3d 715, 720 (5th Cir. 2002). At the pretext stage, the question on summary judgment is whether there is a conflict in substantial evidence. *See Owens v. Circassia Pharms., Inc.*, 33 F.4th 814, 826 (5th Cir. 2022). However, such a showing will not always be enough to prevent summary judgment, because there will be cases where a plaintiff has both established a *prima facie* case and set forth sufficient evidence to reject the defendant's explanation, yet "no rational factfinder could conclude that the action was discriminatory." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 148 (2000).

33.    As an initial matter, Jackson cannot rebut Amazon's evidence that it sent communications to him regarding his return to work, because Jackson

responded to at least one of Amazon's emails. *See also Gezu v. Charter Communs.*, 17 F.4th 547, 553-54 (5th Cir. 2021) (applying mailbox rule to find that plaintiff received emails sent by employer); *Burton v. Banta Glob. Turk., Ltd.*, 170 F. App'x 918, 922 (5th Cir. 2006) (applying mailbox rule to letters after holding that proof of mailing may be established by testimony from person who has personal knowledge of the procedures in place at the time of mailing). Based on Jackson's failure to timely respond to Amazon's requests for admission, Jackson is also deemed to have received emails Amazon sent him on September 18, 2020, October 12, 2020, October 20, 2020, October 23, 2020, and October 27, 2020, advising him of his obligation to return to work. *See* Dkt. 30.

34.    In this Circuit, job abandonment is a legitimate, non-discriminatory reason for termination. *See, e.g.*, *Cook v. E. Tex. State Univ.*, 142 F.3d 1279 (5th Cir. 1998) (affirming summary judgment because job abandonment was legitimate, nondiscriminatory reason for plaintiff's termination); *Huerta v. Phillips 66 Co.*, No. 3:19-cv-00213, 2021 WL 3671199, *5–6 (S.D. Tx. July 29, 2021) (granting summary judgment to employer based on employee's job abandonment); *Nickel v. Rocky Mt. Clothing Co.*, No.: 3:98-cv-2430, 2000 WL 284192, *6 (N.D. Tex. Mar. 15, 2000) (granting summary judgement to employer because plaintiff failed to return to work); *Parra*, 2011 WL 1232818, at *6 (holding failure to return to work was a lawful reason for termination). Thus, Amazon has proffered a legitimate, non-

16

discriminatory reason for Jackson's termination.

35.    To rebut Amazon's legitimate, non-discriminatory reason for his termination, Jackson must demonstrate that job abandonment was merely a pretext for discrimination. *See Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 143 (2000). Jackson utterly fails to present any evidence to contradict Amazon's reason for his termination. His claim that he was confused about his return-to-work date is beside the point, and belied by the fact that he replied to the final email Amazon sent him about returning to work and that he did not return on the date he mistakenly believed he was supposed to return to work. Dkt. 14, Ex. B-10, October 28 Email at AMAZON_000621; *see also* Ex. C, Soto Decl. at ¶ 16. In light of Amazon's well-documented communications advising Jackson to return to work and his failure to do so either on the date requested or on the date he mistakenly believed he was supposed to, Jackson cannot show the reason for his termination was pretextual.

36.    Accordingly, summary judgment is granted on Jackson's TCHRA race, color, disability, and national origin claims.

### C. Jackson's Retaliation Claim Under the TCHRA

37.    Jackson further asserts he was retaliated against because he complained of discrimination.

38.    To establish a claim for retaliation under the TCHRA, Jackson must

present evidence that he (1) engaged in a protected activity, (2) suffered an adverse employment action, and (3) there is a but-for causal link between the protected activity and the adverse employment action. *Davis v. Dallas Area Rapid Transit*, 383 F.3d 309, 319 (5th Cir. 2004). To establish causation, the plaintiff must "demonstrate that the employer knew about the employee's protected activity." *Manning v. Chevron Chem. Co.*, 332 F.3d 874, 883 (5th Cir. 2003). The Fifth Circuit has specified that "a 'causal link' is established when the evidence demonstrates that the [adverse action] was based in part on knowledge of the employee's protected activity." *Medina v. Ramsey Steel Co., Inc.*, 238 F.3d 674, 684 (5th Cir. 2001) (citation omitted). "[T]he mere fact that some adverse action is taken after an employee engages in some protected activity will not always be enough for a *prima facie* case." *Swanson v. General Services Admin.*, 110 F.3d 1180, 1188 n. 3 (5th Cir. 1997).

39.     If a plaintiff establishes a *prima facie* case of retaliation, the "the burden then shifts to the employer, who must state a legitimate non-retaliatory reason for the employment action; and if that burden is satisfied, the burden then ultimately falls to the employee to establish that the employer's stated reason is actually a pretext for unlawful retaliation." *Gorman v. Verizon Wireless Tex., L.L.C.*, 753 F.3d 165, 171 (5th Cir. 2014).

40.     Amazon argues Jackson is unable to sustain his retaliation claim

18

because he cannot establish a causal connection between his protected activity and his termination. *See* Dkt. 14, at 16–17. In opposition, Jackson argues the close temporal proximity between his second complaint and his termination, alone, is sufficient to prove causation. *See* Dkt. 18, at 25–26. Jackson, however, has not set forth any evidence from which to conclude any decisionmaker involved in the termination of his employment had knowledge he made any of his complaints.

> 1. *Jackson has failed to present a prima facie case of retaliation because he cannot establish causation.*

41.    Jackson's retaliation claim fails on the third element—causation. There is no evidence that that any decisionmaker involved in terminating Jackson's employment was aware of the concerns he raised about Kain. Without evidence that any decisionmaker responsible for terminating Jackson's employment knew of his alleged protected activity, Jackson has not raised a fact issue as to causation. *Gorman*, 753 F.3d at 171 ("If the decisionmakers were completely unaware of the plaintiff's protected activity, then it could not be said . . . that the decisionmakers might have been retaliating against the plaintiff for having engaged in that activity."); *accord Hauser v. Schneider Elec. Sys. USA, Inc.*, 819 F. App'x 247, 250–51 (5th Cir. 2020) (affirming district court's grant of summary judgment where there was no evidence decisionmakers had knowledge of plaintiff's EEOC charge when they terminated her employment); *Medina*, 238 F.3d at 684.

>    *2. Jackson has failed to show evidence that Amazon's reason for his termination was a pretext for retaliation.*

42.     Even if Jackson could establish a *prima facie* claim of retaliation, his retaliation claim still fails because he cannot show job abandonment was pretext for retaliation.

43.     As explained more fully in Section IV.B, Amazon had a legitimate, nondiscriminatory, and non-retaliatory reason to terminate Jackson's employment when he failed to return to work after multiple notices. Because Amazon has set forth a legitimate, non-discriminatory reason for his termination, Jackson "must also show that [the] employer would not have taken the adverse employment action 'but for' the employee's participation in the protected activity." *Scrivner v. Socorro Indep. Sch. Dist.*, 169 F.3d 969, 972 (5th Cir. 1999).

44.     In this case, Jackson admitted that he did not return to work either on his scheduled return date (October 16, 2020) or the date on which he mistakenly claims he was scheduled to return (November 16, 2020). Jackson has not set forth any evidence that Amazon's decision to terminate his employment was merely a subterfuge for retaliation. Further, there is no record evidence that the complaints Jackson made were the but-for reason for his termination. *Scrivner*, 169 F.3d at 972.

45.     Thus, summary judgment is warranted with respect to Jackson's retaliation claim. *See, e.g., Davis*, 383 F.3d at 320 (affirming summary judgment where defendant set forth a legitimate, non-discriminatory reason and plaintiffs were

20

unable to raise a fact question regarding pretext).

### D. Jackson's Punitive Damages Claim Under the TCHRA

46.     In Jackson's Original Petition, he seeks to recover punitive damages. The TCHRA allows a plaintiff to recover punitive damages after a jury finds that the defendant has engaged in an unlawful, intentional employment practice. Tex. Lab. Code § 21.2585. A plaintiff may only recover punitive damages if he demonstrates that the defendant "engaged in a discriminatory practice with malice or with reckless indifference to the state-protected rights of an aggrieved individual." *Id.*  In order to recover punitive damages, a plaintiff must show more than mere discrimination. *See Kolstad v. Am. Dental Assoc.*, 527 U.S. 526, 534 (1999).

47.     In the instant case, Jackson cannot prove liability, as established herein, and because he cannot recover any actual damages, he is precluded by law from recovery of exemplary damages. *Kolstad*, 527 U.S. at 534 (noting that a plaintiff must meet a heightened standard of liability in order to qualify for punitive damages award).   Jackson has failed to present evidence that Amazon acted in a discriminatory or retaliatory manner at all.   *See* Sections IV.A. and IV.B. Additionally, there is no evidence at all that Amazon acted with malice or reckless indifference of Jackson's protected rights.   Absent any such evidence of discrimination or retaliation, let alone evidence of intentional discrimination or retaliation, the imposition of punitive damages is not warranted, and Jackson's claim

for punitive damages is dismissed.

## V.   CONCLUSION

48.   The Court finds that Jackson did not meet his burden of raising a material issue of fact in support of a *prima facie* claim of discrimination or retaliation, nor has he raised a fact issue that Amazon's proffered explanation for his termination was pretextual. Accordingly, the Court hereby

**ORDERS** that summary judgment as to Plaintiff Lynn Jackson's claims against Defendant Amazon.com Services, LLC. Is **GRANTED**. The Court further

**ORDERS** that Plaintiff Lynn Jackson's claims against Defendant Amazon.com Services, LLC are **DISMISSED WITH PREJUDICE**.

**THIS IS A FINAL JUDGMENT**.

SIGNED at Houston, Texas, on this **21** day of March, 2024.

David Hittner
United States District Judge